**F. M. PURYEAR, Sr., et al., Appellants,**

**v.**

**CITY OF GREENVILLE, a municipal corp., etc., et al., Appellees.**

Court of Appeals of Kentucky.

June 21, 1968.

As Modified on Denial of Rehearing
Oct. 18, 1968.

William E. Payton, Jarvis, Cornette & Payton, Greenville, for appellants.

W. D. Bratcher, Greenville, for appellees.

STEINFELD, Judge.

Appellants, Puryear and Rice, sued the City of Greenville, its Mayor, Councilmen,

Building Inspector, Board of Zoning Adjustments and Planning Commission to have an amendatory zoning ordinance declared void and of no effect. From a judgment holding the amendment valid and dismissing the complaint this appeal was filed. We affirm.

The City of Greenville is a municipal corporation of the fourth class. KRS 81.-010. For at least ten years before this litigation the city had some form of zoning ordinance. KRS 100.500. In June 1964 a revised zoning ordinance was adopted which divided the city into seven districts or zones. KRS 100.540. There were two residential zones, one low density (R–1) and the other medium or high density (R–2). The classification of the other zones is not involved in this litigation. The Puryear and Rice homes were located in an area classified "R–2" when this action was filed but while it was pending that area was reclassified "R–1".

On May 17, 1965, the city council again amended the zoning ordinance as follows:

"AN ORDINANCE TO AMEND THE ZONING ORDINANCE OF THE CITY OF GREENVILLE, KENTUCKY.

BE IT ORDAINED AND ENACTED by the Board of Council for the City of Greenville, Kentucky, as follows:

Section One. That section 51.12 of article five of the zoning ordinance for the City of Greenville, Kentucky, be amended to include as a special exception, 'Medical Center', and that said ordinance further be amended to add to article three, section three, Definitions; Sub-Section 31.25 the following definition for Medical Center 'A Medical Center is a building, either connected or under one roof, in which only medical doctors, each practicing the different branch of his profession, have joined together in some form of association, unification or central control for the use of the building, facilities of the building, and the site.'

Section Two. That all ordinances or parts thereof, if any, conflicting with the provisions of this ordinance are hereby repealed insofar as the same affect this ordinance.

Section Three. That this ordinance shall become effective after having been published as required by law."

That amendment had the effect of permitting the construction and operation of a "Medical Center" in the two residential districts.

The appellants contend that the procedure followed in amending the ordinance violated the provisions of the original ordinance which stated how amendments could be adopted. They also complain of the occurrence of an irregularity in the meeting of the council, and that the amendatory ordinance "is arbitrary, unreasonable, capricious and discriminatory and has no substantial basis or relationship in promoting and protecting the public health, morals, convenience, safety or general welfare of the citizens of the City of Greenville."

Before discussing these contentions we deem it appropriate to dispose of a claim that the trial court abused its discretion (CR 6.02(2)) in considering appellees' answer-response which was filed long after the due time fixed by CR 15.01. The second amended complaint was filed November 13, 1965. No answer had been filed to the complaint or first amendment. CR 15.-01 requires that the answer to the second amended complaint be filed "within 10 days after service of the amended pleading, * * *" but it was not until February 7, 1966. No objection was made to the late filing but on March 10, 1966, Puryear and Rice moved for judgment on the pleadings claiming "That the material facts admitted by the pleadings and not controverted by the defendants show that movant is clearly entitled to judgment as a matter of law and on the ground that the ultimate and controlling facts in this case are not in dispute." In support of that motion an affidavit of counsel for appellants was filed

in which he stated the dates above mentioned and that the answer was not timely filed "and should not be considered by the court."

Appellants rely on Weldon and Held v. Finley, Ky., 104 S.W. 701, 31 Ky. Law Rep. 1050 (1907); Conlan v. Conlan, Ky., 293 S.W.2d 710 (1956) and Hawks v. Wilbert, Ky., 355 S.W.2d 655 (1962) and argue that "* * * excusable neglect is a prerequisite which must be first shown under CR 6.02(2) and if no attempt is made to show that excusable neglect existed, as was the fact situation in the case before the Court, the Court has no alternative but to not consider the pleadings filed late."

To counter this claim on March 12, 1966, appellees filed an affidavit in which their counsel said that he had made no objection to the amendments offered by appellants and that the case had proceeded as if the pleadings had been controverted; that the "* * * attorney for plaintiffs and defendant conferred with the Honorable Arthur T. Iler, Circuit Judge, of the Muhlenberg Circuit Court, prior to the February Rule Day, 1966, at which time the parties agreed that efforts would be made to take proof, complete pleadings, and submit all matters to the court upon the merits in the March term of the Muhlenberg Circuit Court." No counter affidavit was made. We said in Hawes v. Cumberland Contracting Co., Ky., 422 S.W.2d 713 (1967):

"Reading CR 15.01 and CR 6.02 together, we construe them to mean that in the absence of waiver by the adverse party a litigant whose time to plead has expired cannot be allowed to do so except upon a motion and showing of excusable neglect. In this case the record does not indicate that any motion was made, nor is there any showing of excusable neglect. Under these circumstances it is our opinion that the overruling of the Commissioner's motion for a default judgment was an abuse of discretion."

In the case now before us an answer to the second amended complaint was due on the 23rd day of November, 1965, but long after that date the attorneys appeared before the court and agreed to "complete pleadings * * * in the March term of the * * * court." We consider that agreement as a waiver within the meaning of the rule announced in Hawes v. Cumberland Contracting Co., supra. The motion for judgment on the pleadings was properly overruled.

Another argument for reversal is that the Greenville City Council did not have the right, power or authority to adopt the amendatory ordinance now under attack for the reason that the original zoning ordinance contained provisions specifying the method of amendment which appellants claim was not followed. They were as follows:

"*Section 108. Amendment.* All regulations, restrictions, and boundaries provided for in this ordinance may be amended or repealed, but only in accordance with the following procedure:

"1. A written request for amendment shall be presented to the Planning Commission for its study and recommendation. Any property owner or resident of the City or City Officer, department, board of bureau, including the Planning Commission or a member thereof, may request such amendment.

"2. Within 90 days after receipt of a request for amendment, the Planning Commission shall hold a public hearing at which parties in interest and citizens shall have an opportunity to be heard. Notice shall be given as required by law, stating the time, place, and the purpose of the hearing.

"3. Within 60 days after the hearing the Planning Commission shall forward a written recommendation to the City Council that the proposed amendment be adopted, rejected, or modified. If the Planning Commission fails to

make a recommendation within the allotted time, such failure shall be construed as a favorable recommendation.

"4. Upon receipt of the Planning Commission's recommendation, the City Council shall adopt, reject, or modify the proposed amendment in accordance with its usual procedures. * * *."

The council met on May 3, 1965, and at the close of the meeting recessed to May 17, 1965. On May 4, 1965, the Planning Commission met and adopted a resolution recommending to the council that the residential section of the zoning ordinance be amended to include as a special exception a Medical Center. The minutes of the council show:

"THE CITY COUNCIL OF THE CITY OF GREENVILLE RECONVENED ON MAY 17, 1965 AT 7:00 P. M. TO CONTINUE THE BUSINESS OF THE REGULAR SESSION OF MAY 3, 1965, WHICH WAS RECESSED UNTIL THIS DATE."

The Mayor read the recommendation of the Planning Commission and after modifying the definition of a Medical Center the council adopted the proposed recommendation.

Appellants argue that the May 17, 1965, meeting was not a regular meeting but on the contrary was a continuation of the May 3, 1965, meeting which had been recessed. They admit that the Planning Commission followed all of the procedures covered by subsections 1 through 3 of Section 108 of the zoning ordinance and level their attack only upon the claimed violation of subsection 4 relying on Beatle v. Roberts, 156 Iowa 575, 137 N.W. 1006 (1912); Ex parte Mirande, 73 Cal. 365, 14 P. 888 (1887) and Town of Hodgenville v. Kentucky Utilities Co., 250 Ky. 195, 61 S.W.2d 1047 (1933) in which we wrote:

"The law is by the great weight of authority that an adjourned meeting is but a continuation of the regular meeting, of which it is an adjournment, and that any business which could have been transacted at the regular meeting may be transacted at such adjourned meeting. * * *. An adjourned meeting of either a regular or stated or special or called meeting is but a continuation of the same meeting."

The principle relied on by appellants does not condemn the action taken by the city council. It does not preclude the consideration of matters which have become current after the commencement of a regular meeting. Nothing in the statutes or the ordinance required the recommendation of the Planning Commission to be presented *prior* to the commencement of a meeting. There is no restriction upon presentation of the recommendation *during* the meeting.

KRS 100.530 and KRS 100.550 required only the following steps to be taken: (1) timely notice of hearing, (2) a public hearing, and (3) final action by the city council *after* receipt of the report of the Planning Commission. Subsection (4) of Ordinance Section 108 only required action by the city council in accordance with its usual procedures *upon receipt* of the Planning Commission's recommendations. There is no suggestion that this adoption was contrary to the usual procedures of the city council. All of the timely procedural steps required by the statutes and the ordinance, i. e., notice, hearing, recommendation and ruling, in that sequential order, were complied with. We find no merit in appellant's contention that the city council lacked authority to adopt the amendatory ordinance at the meeting held on May 17.

We now approach the claim that the amendment to the ordinance "* * * is arbitrary, unreasonable, capricious and discriminatory and has no substantial basis or relation in promoting and protecting the public health, morals, convenience, safety or general welfare of the citizens of the City of Greenville" which is a zoning requirement. KRS 100.500–100.600. Prior

to the amendment the Greenville zoning ordinance read:

## "ARTICLE V

## "PROVISIONS GOVERNING RESIDENCE DISTRICTS

"Section 51. General Provisions for Residence Districts. Within Residence Districts the following regulations shall apply:

"51.11. In R–1 zones, single family dwellings only, in R–2 zones single and multiple family dwellings customary general horticulture uses and buildings incidental thereto and customary incidental home occupations (R–2 only).

"51.12. The following uses are special exceptions in all residential districts and require written approval of the Board of Zoning Adjustment. Churches and other places or worship, parish houses, public libraries, schools offering general · education courses, public parks, and non-commercial public recreational facilities, municipal, county, state or federal use, public utilities, cemeteries, nurses' homes, hospitals for human care, and philanthropic institutions and clubs, except a club the chief activity of which is customarily carried on as a business. The Board of Zoning Adjustment may attach certain conditions to its approval which it feels are necessary to preserve and protect the character of the district in which the proposed use would locate."

Puryear and Rice point out that after the amendment section 51.12 authorized the erection and operation of a "Medical Center" in the residential districts. They say that before the only "special exceptions" were non-profit organizations and that afterwards a "commercial use" is being authorized. They cite many cases from within and without this state in support of their argument that "Medical Centers" may

not be authorized in the residential zones. Some of the cited cases were Polk v. Axton, 306 Ky. 498, 208 S.W.2d 497 (1948); Parker v. Rash, 314 Ky. 609, 236 S.W.2d 687 (1951); Hamilton Co. v. Louisville & Jefferson County Planning & Zoning Commission, Ky., 287 S.W.2d 434 (1956); Mathis v. Hannan, Ky., 306 S.W.2d 278 (1957); Fritts v. City of Ashland, Ky., 348 S.W.2d 712 (1961) and Hodge v. Luckett, Ky., 357 S.W.2d 303 (1962). Those involved a variance or an attack on an adopted amendment or a refusal to amend the ordinance to change the zoning classification of a specific tract of land. Here the amendment was to add "Medical Centers" to the list of special exceptions contained in section 51.12. "Exceptions are allowable to serve the general good and welfare rather than individual interests merely, while a variance is a relaxation of the general rule of the ordinance to alleviate conditions peculiar to particular property." 101 C.J.S. Zoning § 273, p. 1038. The enactment did not grant a variance or change the zoning classification of a specific tract.

■ The move of the City of Greenville to control the use of land by the zoning process is an exercise of the police power delegated to it by the general assembly. Selligman v. Von Allmen Bros., 297 Ky. 121, 179 S.W.2d 207 (1944); Jones v. Russell, 224 Ky. 390, 6 S.W.2d 460 (1928); Bosworth v. City of Lexington, 277 Ky. 90, 125 S.W.2d 995 (1939) and Adams v. City of Richmond, Ky., 340 S.W.2d 204 (1960); Hobbs v. Markey, Ky., 398 S.W.2d 54 (1965). This power is subject to the constitutional limitation that it may not be asserted unreasonably or arbitrarily. Chesapeake & O. Ry. Co. v. Greenup County, 6 Cir., 175 F.2d 169 (1949).

Appellants urge us to say that "existing doctors' office building or medical clinic being a business use or a function" is detrimental to and incompatible with a residential district, and therefore arbitrary and unreasonable.

Citing Thomson v. Tafel, 309 Ky. 753, 218 S.W.2d 977 (1949) and cases from many states it was said in 101 C.J.S. Zoning § 56, p. 777 that:

"A zoning ordinance establishing residential districts may, in proper circumstances, provide for and permit within such districts uses incidental or accessory to residential use, and may also permit therein non-residential, or business or commercial uses. Generally, the legislative classification of non-residential uses permitted in a residential district will be upheld, provided it is not arbitrary and discriminatory."

The technique of special uses was developed in Lazarus v. Village of Northbrook, 31 Ill.2d 146, 199 N.E.2d 797 (1964), "as a means of providing for infrequent types of land use which are necessary and desirable but which are potentially incompatible with uses usually allowed in residential, commercial and industrial zones." The Illinois court continued, "In our opinion a hospital may appropriately be included in the residential category of special uses." Non-commercial and commercial uses such as churches (Reeves v. North Shreve Baptist Church, La.App., 163 So.2d 458 (1964) ); philanthropic institutions (Thomson v. Tafel, 309 Ky. 753, 218 S.W.2d 977 (1949) ); public and private schools (Board of Education of Louisville v. Klein, 303 Ky. 234, 197 S.W.2d 427 (1946), Merrick Community Nursery School v. Young, 11 Misc.2d 576, 171 N.Y. S.2d 522 (1958) and Brandeis School v. Village of Lawrence, 18 Misc.2d 550, 184 N.Y.S.2d 687 (1959) ); motels (Burnham v. Board of Appeals of Gloucester, 333 Mass. 114, 128 N.E.2d 772 (1955), and Costello v. Sieling, 223 Md. 24, 161 A.2d 824 (1960) ); hotels (Purdy v. Moise, 223 S.C. 298, 75 S.E.2d 605 (1953) ); halls (National Maritime Union of America v. City of Norfolk, 202 Va. 672, 119 S.E.2d 307 (1961) ); hospitals and clinics (Crain v. City of Louisville, 298 Ky. 421, 182 S. W.2d 787 (1944), and Shepard v. City of Seattle, 59 Wash. 363, 109 P. 1067, 40 L.

R.A.,N.S., 647 (1910) ); parking lots (Kline v. Louisville and Jefferson County Board of Zoning Adjustment and Appeals, Ky., 325 S.W.2d 324 (1959) ) and clubs (Bohan v. Village of Riverside, 9 Ill.2d 561, 138 N.E.2d 487 (1956) ) have been approved as special exceptions in residential districts. See The Law of Zoning and Planning, Rathcoff, Vol. 2, Chapter 54 and Zoning Law and Practice, Yokely, Vol. 3, Chapter 28.

■ We find that the use of "special exceptions" is a common, necessary and approved part of zoning laws. 101 C.J.S. Zoning § 271, p. 1034. We are not convinced that "Medical Centers" may not be authorized in residential districts.

KRS 100.520 in part provided that "The regulation shall be made with reasonable consideration of the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land." The "* * * regulations, restrictions, and boundaries may from time to time be amended * * *." KRS 100.540.

The Greenville ordinance required that the "special exceptions" have written approval of the Board of Zoning Adjustment and that this board could "attach certain conditions to its approval which it feels are necessary to preserve and protect the character of the district in which the proposed use would locate." A similar ordinance was approved in Schmidt v. Craig, Ky., 354 S.W.2d 292 (1962).

■ Properly amending an ordinance is a matter for the law making bodies in the zoning process. The council of the City of Greenville has determined that the questioned uses should be permitted in both residential areas. Courts cannot substitute their judgment for the legislative enactment for to do so would be to usurp the power reserved for the legislative authority. Schloemer v. City of Louisville, 298 Ky. 286, 182 S.W.2d 782 (1944).

The burden was on appellants to show that the legislative body acted arbitrarily, capriciously or illegally, as they charge, in adopting this amendment. Leutenmayer v. Mathis, Ky., 333 S.W.2d 774 (1960); City of Richlawn v. McMakin, 313 Ky. 265, 230 S.W.2d 902 (1950) and Blancett v. Montgomery, Ky., 398 S.W.2d 877, 10 A.L.R.3d 1220 (1966). In the findings of fact and conclusions of law the trial court said that "there is no showing in the record that the construction of a Medical Center in any residential area in the City of Greenville, Kentucky will result in any undue hardship on any abutting property owner or that the construction of said facility will have any adverse effect upon any abutting property owner", and it further held that the action taken by the city council was not arbitrary. We concur. Schmidt v. Craig, Ky., 354 S.W.2d 292 (1962); Louisville Timber & Wooden Products Co. v. City of Beechwood Village, Ky., 376 S.W.2d 690 (1964); Hatch v. Fiscal Court of Fayette County, Ky., 242 S.W.2d 1018 (1951); Byrn v. Beechwood Village, Ky., 253 S.W.2d 395 (1952).

The judgment is affirmed.

All concur.